ELLIS,' Judge.
In this suit the plaintiff is seeking to recover damages caused by a fire to certain woodland or cut-over pine land which it' owned, allegedly due to negligence on the part of Crosby Chemicals, Inc., one of the defendants herein and/or its employee, Robert A. Scalfi, also a defendant, and/or Joseph Vaughn who was allegedly the employee of the second named defendant, in that on or about August 11, 1954 pursuant to a contract granting the right to remove pine stumps and dead pine wood located on the plaintiff’s land by means of dynamiting, one Otis Buxton, who was also made a defendant as an employee of Joseph Vaughn, ordered and directed J. D. Doyle, another defendant herein, and an alleged employee of the defendant Joseph Vaughn, to blast stumps with dynamite, and that Doyle allegedly failed to pack the explosive and powder or shavings into a hole drilled *501 in the stump- for that purpose and “as a direct and proximate consequence of such gross negligence, fire blew out of said hole, setting the woods on fire which caused the damages to petitioner as are hereinafter set forth.”
The case was duly tried and judgment was rendered in favor of the plaintiff, not upon the basis of the alleged negligence in failing to pack the explosive and powder and shavings into the hole drilled for that purpose, but upon the ground that testimony was introduced on the trial without objection which enlarged the pleadings and convicted the defendants of negligence as a proximate cause of the fire. The defendants against whom judgment was cast have appealed.
 The defendants strenuously urge that it is a well-settled principle of law in this state, which it is, that evidence admissible under the pleadings cannot have the effect of enlarging the pleadings, in other words, if the testimony is admissible for any purpose under the pleadings even though it might prove negligence independent of the-pleadings or outside of the pleadings it could not be excluded and it is not necessary to object to such testimony as it is clearly admissible and its effect must be limited in evaluating such testimony to the purpose set forth in the pleadings. Defendants cite the case of Hope v. Madison, 192 La. 593, 188 So. 711, 715, in which the Supreme Court of Louisiana stated:
“‘Evidence received without objection can enlarge the pleadings only where such evidence was inadmissible under the pleadings, and would have had to be excluded if objected to. As a matter of course, evidence admissible under the pleadings cannot have the effect of enlarging the pleadings, if it had such effect, the issues in every case would have to be ascertained from the evidence instead of from the pleadings.’ ”
The law is well settled on this point and citation of numerous other authorities is-unnecessary. In order to pass upon the question involved it is necessary that we examine that portion of the petition which sets forth the grounds of negligence relied upon by the plaintiff for recovery in this case:
“13.
“That on or about said date, Otis Buxton, acting as aforesaid, ordered and directed J. D. Doyle, a defendant herein, and an employee, agent, and representative of Joseph Vaughn to blast stumps with an explosive material. Thereupon, J. D. Doyle, acting pursuant to said order, and in the course and scope of his said employment, drilled a hole in a stump or stumps, placed an explosive material therein, and lit a fuse which detonated or exploded said material and thus blasted a stump or stumps in small parts to facilitate the handling and transportation thereof to a processing plant owned and operated by Crosby Chemicals, Incorporated
“14.
“Plaintiff further alleges that said J. D. Doyle, failed to pack the explosive or powder and shavings into the aforesaid hole or holes and as a direct and proximate consequence of such gross negligence, fire blew out of said hole, setting the woods on fire which caused the damages to petitioner as are hereinafter set forth.
“15.
“That as a proximate result of said gross negligence, timber, trees and forest products owned by plaintiff herein, situated, located, lying and standing on its lands in Sections Four (4), Nine (9) and Ten (10), in Township Four (4) North, Range six (6) West, in the parishes of Vernon, Rapides and Natchi-toches, State of Louisiana, was damaged, burned and destroyed causing your petitioner to suffer loss and be damaged in the amount herein sued for.”
*502 The District Court in that portion of its written reasons pertinent to the question under consideration stated:
“Perhaps, the act of negligence charged in the petition, that is, Doyle’s failure to properly pack shavings around the fuse, in the auger hole, before lighting the fuse, was not proved by the preponderance of the evidence required. This is so, because it is far from certain, from the evidence, that such packing of shavings around the fuse is for the purpose of or serves to prevent fire being thrown into the adjacent woods. The contrary is in evidence, that is, that it serves no such purpose, but is done for the purpose of maintaining the fuse in position, and retaining the force of the explosion in the stump. It is also in evidence, and undisputed, that whether the hole is so packed or not, the cloth wrapping around the fuse is always ignited by the explosion and the fuse is always thrown some ten to twelve feet from the stump. Moreover, it is far from certain, that the evidence shows that the hole was not packed with the shavings in the manner plaintiff says was necessary. On the contrary Doyle, the only one who actually knows, said he did so pack it. Accordingly, were there no other acts of negligence proved, without objection, the court would have to hold that plaintiff had not established fault on the part of the defendants, or their failure to damage the land and timber ‘as little as conveniently possible’.
“It is not disputed that the fire did occur. Nor is it disputed that it originated in the explosion of the dynamite in the stump. In fact, two defendants, Doyle and Buxton confirmed that fact. They both knew that the cloth wrapping around the fuse would be ignited by the explosion and that the fuse would be thrown out into and was likely to ignite the nearby grass. Notwithstanding that knowledge, they apparently were not concerned with the possibility or probability of a fire starting from the ignited covering on the fuse, because Doyle, in his testimony, transcript 114, said: ‘When Mr. Bux-ton heered it popping (meaning the fire) well, we ran back up there and went to fighting it, but it was done got to be a good size. I then had to go in there and get my powder, fuse and caps out of there to keep them from burning up.’ Although this act of negligence was not alleged as the proximate cause, or part of the proximate cause of the fire, it was testified to, without objection, by one of the defendants, himself, and thus the pleadings were enlarged.
“It appears to this Court that since the two defendants who were directly in charge of the work being done, had definite knowledge of the fact that the fuse, with its ignited cloth wrapping, would be thrown out some ten or twelve feet, into the grass, knew that the ‘grass was high and the wind was high’ it was the grossest of negligence, on their part, not to immediately go to the place where the fuse was thrown, as soon as they could, for the purpose of seeing that no fire was started. To have done less, seems to this Court, to have constituted gross negligence. They made no effort to ascertain whether the fuse had set the grass afire, and didn’t know it had done so, until ‘he (Mr. Buxton) heard it popping.’ That failure in this Court’s opinion, gave rise to an action for damages, at least as against these two defendants, Buxton and Doyle, under Article 2315 of the [LSA] Civil Code, a part of which reads as follows:
“ ‘Every act whatever of men that causes damage to another obliges him by whose fault it happened to repair it.’
“The court is also of the opinion that the omission referred to was not the 'use of all reasonable precaution to damage the soil and tree growth as little as conveniently possible,’ the obligation undertaken by Crosby in the contract under which it purchased the stumps.”
There are two questions before the Court, first, whether the testimony which the District Court refers to was admissible under the pleadings and, secondly, if not, does the consideration of this testimony convict the defendants of negligence and liability for the damages suffered by the plaintiff.
*503 We agree with the finding of the District Court that the plaintiff failed to prove the negligence charged in Article 14 of its petition. While the allegation of negligence is somewhat vague in that the petition does not set forth what happens upon the failure to pack the fuse, the questions asked and evidence given show that the plaintiff contended that a failure to pack the fuse as alleged resulted in the fire blowing or spewing out, which would lead one to believe that when it did this it threw fire in all directions; therefore, any and all testimony with regard to where the fire started, how it started, why it started, what progress it had made when first observed would be admissible. Any testimony by the two men who did the job as to what they did in preparing the 'charge of dynamite for the stumps, in lighting the fuse, and it is shown that they ran two or three hundred yards over a hill, presumably to get out of the danger zone, where they were when they first saw, heard or observed the fire, would all be admissible. Also admissible would be the length of time or the approximate length of time it took them to return to the scene of the dynamiting and fire, for this would be a test of their credibility. For example, this fire started as a result of the dynamite blasting of a stump, and the plaintiffs contend that due to the negligence in the packing of the explosive and fuse that it spewed out over the woods. Any testimony as to how many fires were first observed, and how soon after the explosion, in and around the blasted stump, would be admissible. All questions which might support a witness’ version along this line or destroy it would be admissible.
In the present case Buxton and Doyle, the two men who set the explosive, could have been extensively questioned with a purpose of showing that they were not in a position to testify that the fire had started at one point or many points. In fact, from their testimony it would appear that this fire started very rapidly, and even though when they heard the fire “crackling” or “popping”, which as the Judge of the Lower Court says are descriptive words, they ran back to the scene in order to put it out. The actual testimony which the judge refers to as enlarging the pleadings was given by J. D. Doyle, and is as follows:
“Q. Now, when this dynamite goes off, what happens? A. Well, wood flies every which away. A big flame of fire will shoot out from there when it goes off.
* * * * * *
“Q. Do you often have a fire as a result of this kind of operation? A. Not often, sometimes. You generally have fellows around, you know, that can help us put it out, keep it from getting too bad.
“Q. Now, what is .the difference about when the fuse blows out if you pack the shavings inside or don’t pack them in? A. Well, the fuse is going to come out anyway, if you pack it or don’t pack it. When the stump tears up, naturally the fuse, I don’t know what you call it, whether it is cloth or what you’d call it, but it goes back off out there and burns and smokes.
“Q. How did you pack this particular blast that caused this fire? A. Well, I just put the powder in there and picked up a very few shavings and tamped back in there against the powder, I didn’t have any more shavings, so I just lit the fuse and ran off about two hundred yards or three, over a little hill. When Mr. Buxton heard it there, he heered, it popping, well, we run back up there and went to fighting it, but it was done got to be a good size. I then had to go in there and get my powder, fuse and caps out of there to keep them from burning up.
******
“Q. On this particular day when you performed this operation, how did it compare with the way you were doing it and other men that you have seen doing it? A. Well, it is just — that day it was just one of them things, I guess, you know, the grass was high and the wind was high, and when it went off, I was at least two hundred yards from it and when I caught it *504 was burning I couldn’t get there and put it out, it just over-powered me.”
We are of the opinion that this testimony was admissible under the pleadings and could not have been excluded if objected to, and, therefore, did not enlarge the pleadings.
For the above and foregoing reasons, the judgment of the district court is reversed and plaintiff’s suit is dismissed at its costs.